**2025 Tex. Bus. 42**



**The Business Court of Texas,
First Division**

| | | |
|---|---|---|
| FIBERWAVE, INC., | § | |
|     *Plaintiff/Counter-Defendant,* | § | |
| v. | § | |
| AT&T ENTERPRISES, LLC, | § | |
|     *Defendant/Counter-* | § | |
|     *Plaintiff/Third-Party* | § | Cause No. 25-BC01A-0013 |
|     *Plaintiff,* | § | |
| v. | § | |
| SPEARHEAD NETWORKS | § | |
| TECH, INC., FAISAL | § | |
| CHAUDHRY, and CHRIS PERCY, | § | |
|     *Third-Party Defendants.* | § | |

═══════════════════════════════════════

**Memorandum Opinion and
Partial Summary Judgment on Plaintiff's Tort Claims**

═══════════════════════════════════════

Before the Court is Defendant AT&T Enterprises, LLC's *Motion for Partial Summary Judgment on Plaintiff's Tort Claims*. Defendant (AT&T) contends Plaintiff's (Fiberwave's) tortious interference with contract, defamation, and business disparagement claims are barred by the limitation-

of-liability provision in the parties' 2022 Alliance Program Agreement (the

Agreement). The motion is GRANTED IN PART AND DENIED IN PART.

**I.     Section 18.6 of the Agreement does not bar Fiberwave's claims because its damages did not arise from AT&T's termination of the Agreement.**

Section 18.6 of the limitation-of-liability provision in the Agreement is

not ambiguous and can be construed as a matter of law. *See Great Am. Ins. Co.*

*v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (noting that "the goal of contract

interpretation is to ascertain the parties' true intent expressed by the plain

language they used"). That section states:

> UPON TERMINATION OF THIS AGREEMENT PURSUANT TO THE TERMINATION RIGHTS SET FORTH IN THIS AGREEMENT, NEITHER PARTY WILL BE LIABLE TO THE OTHER, **EITHER FOR COMPENSATION OR FOR DAMAGES OF ANY KIND OR CHARACTER WHATSOEVER ARISING FROM SUCH TERMINATION**, WHETHER ON ACCOUNT OF THE LOSS BY AT&T OR SP OF PRESENT OR PROSPECTIVE PROFITS ON SALES OR ANTICIPATED SALES, OR EXPENDITURES, INVESTMENTS OR COMMITMENTS MADE IN CONNECTION THEREWITH, OR IN CONNECTION WITH THE ESTABLISHMENT, DEVELOPMENT OR MAINTENANCE OF SP'S BUSINESS, OR ON ACCOUNT OF ANY OTHER CAUSE OR THING WHATSOEVER, EXCEPT THAT TERMINATION WILL NOT PREJUDICE OR OTHERWISE AFFECT THE RIGHTS OR LIABILITIES OF THE PARTIES WITH RESPECT TO ACTIVITIES PRIOR TO SUCH TERMINATION.

AT&T's Appx. Ex. 1, Pg. APP025 (emphasis added).

AT&T contends that Fiberwave's tort claims are barred under Section 18.6 because they arise from AT&T's termination of the Agreement. The Court is not persuaded. Importantly, the question is not whether AT&T's complained-of acts arose from the termination of the Agreement, but whether Fiberwave's *damages* did.

AT&T's argument hinges on the breadth of the phrase "arising from such termination." Interpreting a similar phrase, the Texas Supreme Court has held "the phrase 'arise out of' simply requires showing a causal connection or relation . . . " *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 353 (Tex. 2020); *see also Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). Earlier this year, the Business Court observed that "courts interpret 'arising out of' as denoting a broad causal relationship—akin to 'but for' causation instead of the narrower and limiting linkage required of 'proximate' causation." *Atlas IDF, LP v. NexPoint Real Est. Partners, LLC*, 2025 Tex. Bus. 16, ¶ 29 (1st Div. 2025).

Admittedly, but-for causation "has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc. (Plains*

*Exploration)*, 473 S.W.3d 296, 308 (Tex. 2015) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 581 (Tex. 2007)). However, phrases such as "arise from" cannot be viewed "divorced from their surroundings." *Id.* at 309.

In *Plains Exploration*, the Supreme Court rejected expansive interpretations of the phrases "arising from," "with respect to," and "attributable to" where broad but-for causation would have led to an illogical and unreasonable result: inconsistency with the parties' expressed intent. *Id.* at 308-09. The Court noted that a broad but-for causal standard—in that case, one allowing "everything in existence or previously occurring . . . [to] be a but for cause of all that follows"—would render temporal divisions elsewhere in the contract "utterly meaningless." *Id.* at 309. The Court explained, "To give effect to the words the parties chose, there must be more than a simple causal connection." *Id.*

"[W]hen parties narrow the scope of their rights and obligations purposefully, the Court must enforce the terms expressed within the four corners of the contract." *Yowell*, 620 S.W.3d at 353. Here, as in *Plains Exploration*, other language in the Agreement requires a similarly tapered

reading of "arising from." Specifically, Section 18.6 must be read in context with Section 18.2 of the Agreement, wherein the parties used the words "arising out of or related to" rather than simply "arising from." *See infra*, Pg. 7; AT&T's Appx. Ex. 1, Pg. APP025. The added language, "related to," means "'a connection with or reference to.'" *Colorado v. Tyco Valves & Controls, L.P.*, 432 S.W.3d 885, 890 (Tex. 2014) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). Its ordinary meaning does not require a causal relationship. *Shaw*, 463 U.S. at 97 n.16. As such, the phrase "arising out of or related to" is interpreted more broadly than "arising from."

So while it is true that the but-for causal standard may "embrace[] every event that hindsight can logically identify in the causative chain," *Plains Exploration*, 473 S.W.3d at 308 (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 581), the parties' use of "arising from" here must be read more narrowly. Doing so rightfully preserves the meaningful difference reflected in the two phrases used in the Agreement: "arising from" in Section 18.6 and "arising out of or relating to" in Section 18.2. *See Brittingham v. Mirabent*, No. 04-17-00028-CV, 2017 WL 2852627, at *5 (Tex. App.—San Antonio July 5, 2017, no pet.) (mem op., not designated for publication). A broader

interpretation, such as that urged by AT&T—encompassing every logically connected event subsequent to its termination of the Agreement—would improperly negate the distinction in the parties' word choice. Accordingly, the Court finds that "arising from" in Section 18.6, viewed in context, has limits, and cannot be interpreted broadly enough to support AT&T's argument that, but for the termination of the 2022 [Alliance Program] Agreement, Fiberwave would not have sustained any of its claimed damages.[1]

The Court concludes that Section 18.6 does not categorically bar Fiberwave's claims for damages attributable to AT&T's (alleged) post-termination acts, namely: issuance of a press release, communication via email, and publication on a website. While AT&T may not have committed the complained-of acts but for the termination, Fiberwave's pleading seeks damages attributable to the complained-of acts, and not attributable to the

---

[1] Unlike in cases involving arbitration clauses, public policy also weighs against a broader interpretation here because Section 18.6 could operate as a prospective, intentional tort exculpation clause. *See Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 116 (Tex. 2014) (holding pre-injury contractual waivers of future liability for intentional or reckless torts void and unenforceable for public policy reasons). *Cf., e.g., Plains Exploration*, 473 S.W.3d at 308 (citing *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006)).

termination. The Court therefore holds that AT&T's motion for partial summary judgment must be denied as to arguments raised under Section 18.6.

## II. Section 18.2 is an enforceable bar on incidental, consequential, and indirect damages, and consequently forecloses any recovery for business disparagement as a matter of law.

Second, AT&T argues that Section 18.2, which bars incidental, consequential, and/or indirect damages, forecloses Fiberwave's tort claims because they only seek those types of damages. Section 18.2 of the limitation-of-liability provision states:

> AT&T WILL NOT, UNDER ANY CIRCUMSTANCES, BE LIABLE TO SP FOR ANY INCIDENTAL, CONSEQUENTIAL, OR ANY OTHER INDIRECT LOSS OR DAMAGE, INCLUDING LOST PROFITS OR LOST REVENUES, ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OBLIGATION RESULTING THEREFROM, OR THE USE OR PERFORMANCE OF ANY SERVICE.

AT&T's Appx. Ex. 1, Pg. APP025. The Court agrees with AT&T's reading of Section 18.2 but nevertheless rules that it does not operate as an automatic bar to all of the challenged claims.

AT&T's motion is predicated on the argument that Fiberwave does not *seek* any recoverable damages.[2] Only special damages are required to be pleaded with specificity. Tex. R. Civ. P. 56. Here, the record establishes that Fiberwave pleaded for general damages but not for any special damages in relation to its claims for tortious interference with contract, defamation, or business disparagement. *See generally*, Fiberwave's 2d Am. Pet. Regardless, the express language of Section 18.2 would bar recovery of any special damages, or consequential damages. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (describing consequential damages). The question before the Court, then, is whether Fiberwave can recover general damages for any of its three challenged tort claims as a matter of law.

First, tortious interference supports recovery of actual damages, including certain categories of general damages. *See, e.g.*, *Tucker v. K & M Trucking, Inc.*, No. 04-15-00784-CV, 2016 WL 4013787, at *1 (Tex. App.—San Antonio Jul. 27, 2016, no pet.) (mem op., not designated for publication).

---

[2] AT&T's motion did not include no-evidence grounds or otherwise challenge Fiberwave to adduce proof of recoverable damages.

"The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed." *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990). Actual damages for tortious interference can also include harm to reputation. *Tucker*, 2016 WL 4013787, at *1 (citing *Browning-Ferris, Inc. v. Reyna*, 852 S.W.2d 540, 549 (Tex. App.—San Antonio 1992, rev'd on other grounds (865 S.W.2d 925, 928 (Tex. 1993)))). Thus, Section 18.2's bar on incidental, consequential, or other indirect damages does not operate as a bar to Fiberwave's tortious interference claim, which can proceed to the extent that it seeks actual, general, direct damages. Such damages are not barred by the plain language of Section 18.2 and need not be specifically identified in Fiberwave's pleadings.

Similarly, defamation damages can include general damages. *See Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 427 (Tex. 2022, reh'g denied). The Supreme Court has explained, "General damages are awarded for noneconomic harms, such as mental anguish or loss of reputation." *Id.* Such

general damages do not require proof of a pecuniary loss. *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014, reh'g denied). Texas law does permit a plaintiff to recover general, direct damages for defamation, and no specific pleading of those damages is required. Section 18.2 does not, by its plain language, bar recovery of general, direct damages for defamation.

The same cannot be said for business disparagement. In *Innovative Block of South Texas, Ltd. v. Valley Builders Supply, Inc.*, the Supreme Court noted "special damages are fundamental to business disparagement." 603 S.W.3d 409, 417 (Tex. 2020). This difference reflects the fact that "defamation redresses dignitary harm, while business disparagement redresses commercial harm." *Id.* at 418 (citing *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015)). Special damages are a necessary element of a claim for business disparagement. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987, reh'g denied). Accordingly, Section 18.2's bar on special damages is fatal to Fiberwave's business disparagement claim.

In sum, the Court holds that Section 18.2 bars Fiberwave's business disparagement claim as a matter of law because it bars special damages, the

only recoverable damages under this theory of liability. However, Fiberwave's tortious interference with contract and defamation claims are not expressly barred by Section 18.2, and can be established upon proof of general, direct damages that need not have been specifically pleaded. Accordingly, those claims survive.

## III. Conclusion

IT IS THEREFORE ORDERED that Defendant's *Motion for Partial Summary Judgment on Plaintiff's Tort Claims* is GRANTED IN PART AND DENIED IN PART. Plaintiff's claim for business disparagement is barred as a matter of law under Section 18.2 of the Agreement, but Plaintiff's tortious interference with contract and defamation claims may proceed to the extent they seek general, direct damages arising from AT&T's post-termination conduct and not from AT&T's termination of the Agreement.

IT IS FURTHER ORDERED that Plaintiff's motion—in its *Response to AT&T Enterprises, LLC's Motion for Partial Summary Judgment on Plaintiff's Tort Claims*—for leave to amend the live petition is DENIED. Plaintiff's motion to strike certain exhibits in Defendant's motion is MOOT. The Court did not base any portion of its decision on any of the challenged exhibits.

_Andrea K. Bouressa_

ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON: October 29, 2025.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107453081
Filing Code Description: Proposed Order
Filing Description: Memorandum Opinion and Partial Summary Judgment on Plaintiff's Tort Claims
Status as of 10/30/2025 8:33 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Dave Wishnew | | dwishnew@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Michael Lang | | mlang@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Brian Shields | | bshields@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| James D.Shields | | jshields@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| Bart F.Higgins | | bhiggins@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| Kathy Donalds | | kdonalds@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| Sasha Begovic | | sbegovic@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| Bayley Clark | | bclark@shieldslegal.com | 10/29/2025 4:58:59 PM | SENT |
| Bella Lee | | bella.lee@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Pete Marketos | | pete.marketos@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Whitney Wendel | | whitney.wendel@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Tyler Bexley | | tyler.bexley@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Matthew Muckleroy | | mmuckleroy@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Dallas Flick | | dflick@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Diana Castillo | | paralegal2@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Tuelin Abii | | tabii@henryhilltx.com | 10/29/2025 4:58:59 PM | SENT |
| Melissa Diaz | | mdiaz@henryhilltx.com | 10/29/2025 4:58:59 PM | SENT |
| Dee Dee Carr | | deedee.carr@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Chloe Levy | | chloe.levy@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| Byron  Henry | | bhenry@henryhilltx.com | 10/29/2025 4:58:59 PM | SENT |
| Kendall C.Simpson | | kendall.simpson@rm-firm.com | 10/29/2025 4:58:59 PM | ERROR |
| Allison  N. Cook | | allison.cook@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107453081
Filing Code Description: Proposed Order
Filing Description: Memorandum Opinion and Partial Summary Judgment on Plaintiff's Tort Claims
Status as of 10/30/2025 8:33 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Allison  N. Cook | | allison.cook@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |
| David Akere | | dakere@cwl.law | 10/29/2025 4:58:59 PM | SENT |
| Will Hamilton | | will.hamilton@rm-firm.com | 10/29/2025 4:58:59 PM | SENT |